UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

WILLIAM D. THOMAS,

                                        Plaintiff,           9:17-CV-0300
                                                             (GTS/DEP)

            v.

 L. PINGOTTI; et al.,

                                        Defendants.
_____

_____

WILLIAM D. THOMAS,

                                        Plaintiff,           9:17-CV-0377
                                                             (GTS/ATB)

            v.

POLIZZI; et al.,

                                        Defendants.
_____

APPEARANCES:

WILLIAM D. THOMAS
Plaintiff, pro se
13-A-2123
Downstate Correctional Facility
Box F
Fishkill, NY 12524

GLENN T. SUDDABY
Chief United States District Judge

## DECISION and ORDER

## I.    INTRODUCTION

        The Clerk of the Court has sent to the Court for review two complaints filed pro se by

plaintiff William D. Thomas in the above-captioned actions.[1]  Plaintiff, who is confined at

Downstate Correctional Facility, asserts claims arising out of his confinement at Shawangunk

Correctional Facility ("Shawangunk C.F.") in 2016.  Plaintiff has not paid the filing fee in either

action, and seeks leave to proceed in forma pauperis ("IFP").

## II.    Duplicative Actions

A court reviewing a complaint pursuant to 28 U.S.C. § 1915(e)(2) and 28 U.S.C. §

1915A may properly consider whether the claims asserted by the plaintiff are duplicative of

claims asserted in another action.[2]  As the Second Circuit has recognized, "plaintiffs have no

right to maintain two actions on the same subject in the same court, against the same

defendant at the same time."  *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138-39 (2d Cir. 2000).

The principles which guide courts addressing duplicative and repetitive claims rest on

considerations of "(w)ise judicial administration, giving regard to conservation of judicial

resources and comprehensive disposition of litigation."  *Kerotest Mfg. Co. v. C-O-Two Fire*

*Equip. Co.*, 342 U.S. 180, 183 (1952).  The doctrine is also meant to protect parties from "the

vexation of concurrent litigation over the same subject matter."  *Adam v. Jacob*, 950 F.2d 89,

93 (2d Cir. 1991).  Thus, "[c]ourts generally look to the identity of the parties, legal claims,

factual allegations including temporal circumstances, and the relief sought to determine if the

---

[1]  Since March 2017, plaintiff has filed five civil rights actions in this District.

[2]  The dismissal of an action as duplicative has been found on several occasions to fall within the ambit of the court's power to dismiss a complaint which is frivolous or malicious pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).  *See, e.g., Abreu v. Travers*, No. 9:15-CV-0540 (MAD/ATB), 2015 WL 10741194, at *4 (N.D.N.Y. Sept. 14, 2015) (citing cases), reconsideration denied, No. 9:15-CV-0540 (MAD/ATB), 2016 WL 1717204 (N.D.N.Y. Apr. 28, 2016); *see also Denton v. Hernandez*, 504 U.S. 25, 30 (1992) (recognizing Congress's concern that "a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits") (citation omitted).

complaint is repetitive or malicious." *Hahn v. Tarnow*, No. 06-CV-12814, 2006 WL 2160934, at *3 (E.D. Mich. July 31, 2006).

In managing the litigation in its court, there are several approaches to the proper disposition of duplicative actions, including dismissal without prejudice, and consolidation. *Curtis*, 226 F.3d at 138. The district court has broad discretion in making this determination, and the exercise of its power is reviewed by the Court of Appeals for abuse of discretion. *Id.*; *see also Lopez v. Ferguson*, 361 Fed. App'x 225, 226 (2d Cir. 2010) ("We review a district court's dismissal of claims as duplicative for abuse of discretion."); *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284-85 (2d Cir. 1990) ("The trial court has broad discretion to determine whether consolidation is appropriate.").

The pleading submitted by plaintiff in *Thomas* I is styled as a "Complaint under [New York] Civil Service Law Section 75." *See* Dkt. No. 1 at 5.[3] While nominally directed towards Shawangunk C.F. Acting Supt. Pingotti, the pleading identifies sixteen additional corrections and medical staff as "respondents" and alleges numerous claims of misconduct by those individuals during plaintiff's confinement at Shawangunk C.F. in 2016. *Id.* at 5-9. Liberally construed, plaintiff claims that he has been subjected to adverse actions in retaliation for his having filed grievances and complaints (related primarily to his participation in the Sex Offender Treatment Program ("SOTP")), disciplined without due process, denied proper and adequate mental health care, and denied proper investigation of and redress for the misconduct complained of his grievances.

---

[3] Section 75 provides for the availability of a hearing upon stated charges prior to dismissal of certain government employees in New York. *See Russell v. Hodges*, 470 F.2d 212, 215 (2d Cir. 1972). Civil Service Law Section 75 does not afford plaintiff any basis for relief in this action; in light of plaintiff's pro se status the Court has liberally construed the pleading as seeking redress pursuant to 42 U.S.C. § 1983 ("Section 1983").

In *Thomas* II, plaintiff submitted a twenty-five page complaint utilizing the form civil rights complaint available to litigants in the Northern District of New York. *See* Dkt. No. 1 ("Compl."). All seventeen of the defendants named in *Thomas* I are defendants in this complaint. *Id.* at 1-7. The complaint in *Thomas* II sets forth, with some additional factual support, the instances of misconduct complained of in *Thomas* I, as well as additional claims and three additional defendants. *Id.* at 9-23.[4] Plaintiff seeks an award of compensatory and punitive damages as well as declaratory and injunctive relief. *Id.* at 24-25.

Upon review of the two pleadings, the Court finds that there is considerable duplication and repetition of claims and defendants in these two actions, as to which common questions of law and fact exist. To the extent that these actions differ in any significant way, the differences arise only from the additional claims and defendants in *Thomas* II. The Court also finds that the pleading in *Thomas* II sets forth plaintiff's claims in a more comprehensive and well-organized manner than does the pleading in *Thomas* I which, as noted, purports to be a state court petition under Civil Service Law Section 75.

Based upon the foregoing, and in order to conserve judicial resources and avoid duplicative litigation, the Court hereby dismisses *Thomas* I without prejudice in favor of *Thomas* II.[5]

## III. IFP STATUS

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court

---

[4] The additional defendants are Shawangunk C.F. Supt. Lamanna, Shawangunk C.F. C.O. Cunningham, and Shawangunk C.F. C.O. North. *Thomas* II, Compl. at 2, 6-7.

[5] In light of the dismissal of *Thomas* I, plaintiff's IFP application in that case, *see* Dkt. No. 11, is denied as moot. Except as specifically noted, all further references in this Decision and Order to the docket shall be to *Thomas* II.

4

without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010).[6] "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Id.* (citing 28 U.S.C. § 1915(b) and *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

Upon review, the Court finds that plaintiff has submitted a completed IFP application which has been certified by an appropriate official at his facility, *see* Dkt. No. 10, and which demonstrates economic need. *See* 28 U.S.C. § 1915(a)(2). Plaintiff has also filed the inmate authorization required in the Northern District. Dkt. No. 3.

Accordingly, plaintiff's application to proceed with this action IFP is granted.

## IV.    SUFFICIENCY OF THE COMPLAINT

Having found that plaintiff meets the financial criteria for commencing this action in forma pauperis, and because plaintiff seeks relief from officers and employees of a governmental entity, the Court must consider the sufficiency of the allegations set forth in his complaint in light of 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A. Section 1915(e)(2)(B) directs that, when a plaintiff seeks to proceed in forma pauperis, "(2) . . . the court shall dismiss the case at any time if the court determines that–. . . (B) the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary

---

[6] Section 1915(g) prohibits a prisoner from proceeding in forma pauperis where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions or appeals that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(g). The Court has reviewed plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service. *See* http://pacer.uspci.uscourts.gov. Based upon that review, it does not appear that plaintiff has accumulated three "strikes" for purposes of 28 U.S.C. § 1915(g).

relief against a defendant who is immune from such relief." 28 U.S.C. §1915(e)(2)(B).[7] Similarly, Section 1915A(b) directs that a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (stating that both Sections 1915 and 1915A are available to evaluate prisoner pro se complaints).

In reviewing a complaint, the Court has a duty to show liberality toward pro se litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and should exercise "extreme caution . . . in ordering *sua sponte* dismissal of a *pro se* complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond," *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted). A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is

---

[7] To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Plaintiff seeks relief in this action pursuant to Section 1983, which establishes a cause of action for "'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)); *see also Myers v. Wollowitz*, No. 95-CV-0272, 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (McAvoy, C.J.) (finding that Section 1983 "is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights"). To be held liable for damages in a Section 1983 action, a defendant must have been personally involved in the alleged violation. *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir. 1977). Thus, to set forth a cognizable claim under Section 1983, a "plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.'" *Austin v. Pappas*, No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)).

Plaintiff asserts numerous claims for the violation of his rights protected under the First, Eighth, and Fourteenth Amendments to the U.S. Constitution. The sufficiency of those claims, as set forth in the complaint in seven causes of action, is addressed below.

### A.    First Cause of Action – Retaliation

To state a claim of retaliation under the First Amendment, a plaintiff must allege facts plausibly suggesting the following: (1) the speech or conduct at issue was "protected;" (2) the

defendants took "adverse action" against the plaintiff – namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action – in other words, the protected conduct was a "substantial or motivating factor" in the defendant's decision to take action against the plaintiff. *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (citing *Dawes v. Walker*, 239 F.3d 489, 492 (2d. Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)).

The Second Circuit has long instructed that because virtually any adverse action taken against a prisoner by a prison official can be characterized as a constitutionally proscribed retaliatory act, courts must examine claims of retaliation with "skepticism and particular care." *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (quoting *Dawes*, 239 F.3d at 491). Analysis of retaliation claims thus requires thoughtful consideration of the protected activity in which the inmate plaintiff has engaged, the adverse action taken against him or her, and the factual allegations tending to link the two. "[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone." *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).

Here, plaintiff alleges that he was retaliated against "for filing grievances and voicing opinion. And filing the 42 U.S.C. 1983 lawsuit." Compl. at 10.[8] Plaintiff identifies the following instances in which defendants took allegedly adverse action against him: C.O. Bertone threatened plaintiff with physical harm if he "continue[d] to make complaints;" C.O. Cutler and C.O. Stefanik wrote false reports against plaintiff "due to plaintiff voicing his

---

[8] No other facts are alleged regarding the timing or subject matter of plaintiff's complaints and grievances.

opinion, and views;" and C.O. Clayburn issued a false misbehavior report to plaintiff after learning that plaintiff had written several inmate grievances against "fellow employees." *Id.* at 12.

It is well-settled that "verbal harassment, or even threats, are generally held not to rise to the level of adverse action that will support a First Amendment retaliation claim." *Rosales v. Kikendall*, 677 F. Supp.2d 643, 648 (W.D.N.Y. 2010) (citing *Cabassa v. Smith*, No. 08 Civ. 480 (LEK/DEP), 2009 WL 1212495, at *7 (N.D.N.Y. Apr. 30, 2009)); *see Bartley v. Collins*, No. 95 Civ. 10161, 2006 WL 1289256, at *6 (S.D.N.Y. May 10, 2006) ("[V]erbal threats such as 'we going to get you, you better drop the suit,' do not rise to the level of adverse action."); *Kemp v. LeClaire*, No. 03 Civ. 844, 2007 WL 776416, at *15 (W.D.N.Y. Mar. 12, 2007) (threats such as "your day is coming," "you'll be sent to your mother in a black box," and "you'll get your black ass kicked" are indistinguishable from those that have been found insufficient to establish a constitutional violation).

Upon review, the Court finds that C.O. Bertone's statement that he would "make something happen" to plaintiff if he continued to make complaints, without more, does not suffice to state a cognizable First Amendment retaliation claim against this defendant.

Plaintiff does not enjoy a protected constitutional right "to be free from false and inaccurate information" in his prison records. The creation of a false report in a prisoner's file is not, on its own, a due process violation. *See Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir.1997) ("a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report"); *Hollman v. Bartlett*, No. 08-CV-1417, 2011 WL 4382191, at *12 (E.D.N.Y. Aug. 26, 2011) (the placement of a false report in an inmate's file, without more, is not a due process violation). The only way that false accusations contained in a

misbehavior report can rise to the level of a constitutional violation is when there has been more such as "retaliation against the prisoner for exercising a constitutional right." *Boddie*, 105 F.3d at 862.

Here, while plaintiff alleges that C.O. Cutler and C.O. Stefanik created false reports about plaintiff which were retaliatory in nature, plaintiff has not provided any facts regarding the type of records or reports that were created, the manner in which these records were falsified, or how such falsity harmed plaintiff. Upon review, the Court finds that plaintiff has not alleged facts sufficient to plausibly suggest that these defendants took actions against him which were sufficiently "adverse" for purposes of the First Amendment. As a result, plaintiff's claims against C.O. Cutler and C.O. Stefanik do not survive initial review and are dismissed without prejudice. *Sheehy v. Brown*, 335 Fed. App'x 102, 104 (2d Cir. 2009) (summary order) (allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal.).

The Court also considered the sufficiency of plaintiff's claim that C.O. Clayburn issued a false misbehavior report in retaliation for grievances plaintiff had filed against other corrections officers. *See* Compl. at 12.[9] "Generally, alleged retaliation motivated by an action the prisoner took which did not personally involve the prison officials is insufficient for a retaliation claim." *Ortiz v. Russo*, No. 13 CIV. 5317, 2015 WL 1427247, at *11 (S.D.N.Y. Mar. 27, 2015) (citing *Wright v. Goord*, 554 F.3d 255, 274 (2d Cir. 2009) (dismissing a pro se prisoner's claim that he was assaulted by the defendant in retaliation for an earlier letter he wrote which did not name or address defendant)); *see also Guillory v. Ellis*, No. 9:11-CV-

---

[9] Plaintiff's claim is asserted in wholly conclusory terms; no facts are provided regarding the date(s) of these grievances, the officers against whom the grievances were filed, or the nature of plaintiff's complaints.

0600 (MAD/ATB), 2014 WL 4365274, at *18 (N.D.N.Y. Aug. 28, 2014) ("it is difficult to establish one defendant's retaliation for complaints against another defendant"); *Roseboro v. Gillespie*, 791 F. Supp. 2d 353, 369 (S.D.N.Y. 2011) (plaintiff "failed to provide any basis to believe that [defendant] retaliated for a grievance that she was not personally named in"). Here, because plaintiff has not alleged facts sufficient to plausibly suggest that grievances he wrote against other officers were a "substantial or motivating factor" in C.O. Clayburn's decision to issue the challenged misbehavior report, this claim does not survive initial review.

Based upon the foregoing, plaintiff's retaliation claims against C.O. Bertone, C.O. Cutler, C.O. Stefanik, and C.O. Clayburn set forth in the First Cause of Action are dismissed without prejudice for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 19215A(b)(1).

**B.**     **Second Cause of Action – Equal Protection**

The Equal Protection Clause requires that the government treat all similarly situated people alike. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Specifically, the Equal Protection Clause "bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if 'such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)). To state a viable Equal Protection claim, a plaintiff generally must allege "purposeful discrimination . . . directed at an identifiable or suspect class." *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995). In the alternative, under a "class of one" theory, plaintiff must allege that he has been intentionally treated differently

11

from others similarly situated, with no rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *DeMuria v. Hawkes*, 328 F.3d 704, 706 (2d Cir. 2003).

Here, plaintiff states that he is an "African American Muslim," and claims that defendants treat him differently from the Caucasian inmates in the SOTP "without a [reason] of doing so." Compl. at 13. More specifically, plaintiff alleges that defendants Piliero-Kinderman, Bode-Cutler, and Snyder (identified as Caucasian female employees assigned to the SOTP), spoke disparagingly to him in an attempt to "dehumanize" him and "strip [him] of his self-esteem;" plaintiff contends that these remarks were racially motivated. *Id.* Plaintiff further claims that he was improperly disciplined by defendant Scaringi (identified as a "Caucasian female American"), who ignored substantial evidence of plaintiff's innocence and found him guilty due to her discriminatory motive. *Id.* at 13, 15 (Scaringi went "against her better judgment, due to the fact that plaintiff is a African American male in a sex-offender program. And Defendant is a Caucasian woman."). With respect to a disciplinary hearing conducted by defendant Polizzi (identified as a Caucasian American male), plaintiff claims that he was improperly found guilty without regard to the evidence "because [he] is an African-American Muslim." *Id.* at 15.[10] As against defendant Acting Supt. Pingotti, plaintiff complains that he improperly reviewed and approved misbehavior reports written against plaintiff by C.O. Cutler, C.O. Clayburn, and C.O. Figuero (not a defendant) and designated Polizzi to conduct the hearings, actions that Acting Supt. Pingotti would not have taken in the case of a "Caucasian prisoner who had a false misbehavior report written against him." *Id.* at

---

[10] The hearing was convened to consider an inmate misbehavior report written by C.O. Clayburn. Compl. at 16.

12

18.  Plaintiff further alleges that Acting Supt. Pingotti improperly affirmed the disciplinary findings by defendant Polizzi.  *Id.*

Plaintiff's complaint does not include any facts plausibly suggesting that similarly situated prisoners were treated differently than he was.  Rather, plaintiff merely makes the conclusory assertion that inmates of other races, religions, and gender were treated differently by defendants (or would be treated differently if they found themselves in similar circumstances).  Conclusory allegations of disparate treatment or a plaintiff's personal belief of discriminatory intent are patently insufficient to plead a valid claim under the Equal Protection clause.  *Nash v. McGinnis*, 585 F. Supp. 2d 455, 462 (W.D.N.Y. 2008); *see also Coleman v. Rice*, No. 8:14-CV-1469 (MAD/CFH), 2015 WL 401194, at *7 (N.D.N.Y. Jan. 28, 2015); *Hughes v. Butt*, No. 9:06-CV-1462 (TJM/GHL), 2009 WL 3122952, at *12 (N.D.N.Y. Sept. 28, 2009).

As a result, plaintiff's Equal Protection claims set forth in the Second Cause of Action are dismissed without prejudice for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1).

**C.    Third Cause of Action – Free Exercise**

"Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause."  *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003).  This includes the "right to participate in congregate religious services . . . Confinement in keeplock does not deprive prisoners of this right."  *Salahuddin v. Coughlin*, 993 F.2d 306, 308 (2d Cir. 1993) (internal citations omitted); *see also Ford*, 352 F.3d at 597 ("[A] prisoner's free exercise right to participate in religious services is not

13

extinguished by his or her confinement in special housing or keeplock.").[11]  However, an

inmate's freedom of religion is not absolute, and must be balanced against "the interests of

prison officials charged with complex duties arising from administration of the penal system."

*Ford*, 352 F.3d at 588 (citation omitted).  The analysis of a free exercise claim is governed by

the framework set forth in *O'Lone v. Estate of Shabazz,* 482 U.S. 342 (1987) and *Turner v.

Safley,* 482 U.S. 78, 84 (1987).[12]

    As alleged in the complaint, defendants Piliero-Kinderman, Bode-Cutler, and Snyder

deliberately undertook to deny plaintiff the ability to practice his religion "when they went out

of their way to discretely get plaintiff remove[d] from sex-offender treatment program by

having false misbehavior reports written on plaintiff."  Compl. at 19.[13]  Plaintiff also contends

that defendant Lt. Gardner made disparaging remarks about plaintiff's religion during the

disciplinary hearing he conducted to address these reports.  *Id.*  At the conclusion of the

hearing, Lt. Gardner found plaintiff guilty of misbehavior and sanctioned him with thirty (30)

days of keeplock confinement.  *Id.*  During plaintiff's period of "restrictive confinement," Acting

Deputy Supt. of Security ("Acting DSS") Bertone ignored plaintiff's written requests to attend

---

[11]  As the Second Circuit noted in *Ford*, DOCCS Directive 4202 "sets out prison officials' obligations in accommodating prisoners' religious practices." *Ford*, 352 F.3d at 586.  Part X of Directive 4202 provides that "[u]pon commencement of keeplock or confinement status, an inmate may submit a written request to attend regularly scheduled congregate religious services;" such requests are to be directed to (and decided by) the Deputy Superintendent for Security.

[12]  This framework is one of reasonableness and is "less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *O'Lone*, 482 U.S. at 349.  "It has not been decided in this Circuit whether, to state a claim under the First Amendment's Free Exercise Clause, a 'prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs.'" *Holland v. Goord*, 758 F.3d 215, 220 (2d Cir. 2014) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 274-75 (2d Cir. 2006)).  At this early stage of the action, this Court applies the traditional formulation that, to prevail on a First Amendment claim, an inmate must show that he has a sincerely held religious belief, that it was substantially burdened, and that defendants' conduct was not reasonably related to some legitimate penological interest.  *See Holland*, 758 F.3d at 221; *Salahuddin*, 467 F.3d at 274-75.

[13]  As noted, plaintiff states that he is an "African American Muslim."  Compl. at 13.

Jum'mah services, and "to attend to break of Ramadan prayer and festival" with his "fellow Muslim[s]." *Id.* at 20-21.[14] Plaintiff identifies these observances as "religious tenets" of his faith. *Id.* at 20.

Upon review, and with due regard for plaintiff's status as a pro se litigant, the Court finds that a response to plaintiff's claim that he was denied free exercise of his religion is required from Acting DSS Bertone. This is not a ruling on the merits and the Court expresses no opinion as to whether this claim can withstand a properly filed dispositive motion.

The Court reaches a different conclusion, however, with respect to the sufficiency of plaintiff's claims against defendants Piliero-Kinderman, Bode-Cutler, Snyder, and Gardner. As to these defendants, because plaintiff has not alleged facts which plausibly suggest that they were personally involved in the determinations made regarding plaintiff's ability to participate in congregate religious services during his period of keeplock confinement, his First Amendment free exercise claims against them set forth in the Third Cause of Action do not survive the Court's initial review and are dismissed without prejudice for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1).

### D.     Fourth Cause of Action – Privacy and Failure to Address Grievances

The Supreme Court has recognized that the right to privacy protects against disclosure of personal matters, such as one's medical conditions. *Whalen v. Roe*, 429 U.S. 589, 598-600 (1977); *Doe v. City of N.Y.*, 15 F.3d 264, 267 (2d Cir. 1994). "The privacy interest is at its zenith when the prisoner suffers from an 'unusual' condition, such as HIV or

---

[14]  Plaintiff does not contend that he was prohibited or prevented from praying or otherwise practicing his religion in his cell during the period of keeplock confinement.

transsexualism, that is 'likely to provoke an intense desire to preserve one's medical confidentiality, as well as hostility and intolerance from others.'" *Shuler v. Brown*, No. 07-CV-0937 (TJM/GHL), 2009 WL 790973, at * 5 (N.D.N.Y. Mar. 23, 2009) (quoting *Powell v. Schriver*, 175 F.3d 107, 111 (2d Cir. 1999)).  However, courts have held that the right of confidentiality does not prohibit the disclosure of an individual's criminal history, including arrest records.  *See Paul v. Davis*, 424 U.S. 693, 713 (1976) (finding no constitutional right of confidentiality affected by the publication of the fact that an individual was arrested of shoplifting); *Doe v. Cuomo*, 755 F.3d 105, 114 (2d Cir. 2014) (rejecting claim that reporting and notification requirements of New York's Sex Offender Reporting Act violate plaintiff's right to privacy of personal information); *Cline v. Rogers*, 87 F.3d 176, 179 (6th Cir. 1996) (holding that "there is no constitutional right to privacy in one's criminal record" because "arrest and conviction information are matters of public record").

Here, plaintiff alleges that defendant C.O. Cunningham improperly told other inmates in the SHU that plaintiff "is a rapist in the sex-offender program."  Compl. at 21.  According to plaintiff, C.O. Cunningham intended to "encourage" other inmates to antagonize plaintiff "to see if they could get him to hang himself."  *Id.*

Because the constitutional right to privacy does not protect the type of information allegedly disclosed by C.O. Cunningham, this claim does not survive initial review.[15]

The Fourth Cause of Action also includes claims against Deputy Supt. Taylor-Stewart and Supt. Lamanna which arise, if at all, from their alleged failure to properly investigate and

---

[15]  In light of plaintiff's pro se status, the Court also considered whether plaintiff has plausibly alleged that C.O. Cunningham intentionally exposed plaintiff to "a substantial risk to his safety" in violation of his Eighth Amendment rights when he made comments to other inmates about plaintiff's criminal history, and concludes that he has not.  Plaintiff may pursue such a claim in a properly filed amended complaint.

address plaintiff's complaints and grievances. Compl. at 22. As alleged, Deputy Supt. Taylor-Stewart ignored plaintiff's constant complaints about defendants Piliero-Kinderman, Bode-Cutler, and Snyder. *Id.* Plaintiff also alleges that Supt. Lamanna ignored plaintiff's complaints and improperly denied his grievance. *Id.*

Despite the fact that New York prison inmates are required to exhaust administrative remedies prior to commencing an action complaining of prison conditions, and resort to that grievance process is regarded as protected activity under the First Amendment which insulates inmates against retaliation for engaging in such activity, *see Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996), there is no constitutional right of access to the established inmate grievance program. *Pine v. Seally*, No. 9:09-CV-1198 (DNH/ATB), 2011 WL 856426, at *9 (N.D.N.Y. Feb. 4, 2011) ("the law is . . . clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials") (citing *Bernstein v. New York*, 591 F. Supp. 2d 448, 460 (S.D.N.Y. 2008) (collecting cases); *see also Shell v. Brzezniak*, 365 F. Supp. 2d362, 369-70 (W.D.N.Y. 2005) ("[i]nmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures does not give rise to a cognizable § 1983 claim").

Based upon the foregoing, plaintiff's allegations that his complaints and grievances were not properly processed, investigated, and responded to does not give rise to cognizable claims for the violation of his Fourteenth Amendment due process rights. As a result, these claims against Deputy Supt. Taylor-Stewart and Supt. Lamanna set forth in the Fourth Cause of Action are dismissed without prejudice for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 19215A(b)(1).

### E. Fifth Cause of Action – Unlawful SHU Confinement

Although it is clear that the Constitution "does not mandate comfortable prisons," it does not permit inhumane treatment of those in custody. *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001) (citing *Farmer v. Brennan,* 511 U.S. 825, 832 (1994) and *Rhodes v. Chapman,* 452 U.S. 337, 349 (1981)). "To demonstrate that the conditions of his confinement constitute cruel and unusual punishment a plaintiff must show that (1) he was incarcerated under conditions which posed a substantial risk of serious harm, and (2) prison officials acted with deliberate indifference to his health or safety. *See Farmer,* 511 U.S. at 834; *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994). "Only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298–99 (1991).

In his Fifth Cause of Action, plaintiff claims that he was "unlawfully confined in the SHU" due to the actions of defendants Piliero-Kinderman, Bode-Cutler, Snyder, Cutler, Stefanik, Clayburn, Cunningham, Gardner, Taylor-Stewart, Pingotti, Scaringi, Polizzi, Denniston, North, and Koba. Compl. at 22. No other facts are alleged.

Generally speaking, the "normal' or "ordinary" restraints imposed on inmates confined in SHU are not unconstitutional. *See Sostre v. McGinnis*, 442 F.2d 178, 192 (2d Cir. 1971) (en banc) ("It is undisputed on this appeal that segregated confinement does not itself violate the Constitution.").[16] Moreover, such confinement is not "abnormal" unless it is "totally

---

[16] "Under the 'normal conditions of SHU confinement in New York [state prison],' the prisoner is: placed in a solitary confinement cell, kept in his cell for 23 hours a day, permitted to exercise in the prison yard for one hour a day, limited to two showers a week, and denied various privileges available to general population prisoners, such as the opportunity to work and obtain out-of-cell schooling. Visitors [are] permitted, but the frequency and duration [is] less than in general population. The number of books allowed in the cell [is] also limited." *Palmer v. Richards*, 364 F.3d 60, 66 n.3 (2d Cir. 2004) (citation omitted).

without penological justification, grossly disproportionate, or involve[s] the unnecessary and wanton infliction of pain." *Smith v. Coughlin*, 748 F.2d 783, 787 (2d Cir. 1984) (internal quotation marks and citations omitted). In limited circumstances, the length of the disciplinary detention may itself constitute disproportionate punishment in light of the gravity of the offense. *See Sostre v. McGinnis*, 442 F.2d 178, 190–94 & n.28 (2d Cir. 1971) (length of disciplinary detention [12 months] did not constitute disproportionate punishment considering the gravity of the offense); *Peoples v. Fischer*, No. 11-2694, 2012 WL 1575302, at *9 (S.D.N.Y. May 3, 2012) (denying motion to dismiss claim that disciplinary sentence of thirty-six months SHU confinement for a non-violent rule infraction constituted cruel and unusual punishment), *motion for reconsideration granted in part and denied in part on other grounds*, 898 F. Supp.2d 618, 626 (S.D.N.Y. 2012).

Significantly, plaintiff does not allege that the conditions of his SHU confinement were unduly harsh or in any way "abnormal" or "unusual." Plaintiff has also not disclosed the duration of his confinement. Moreover, plaintiff has failed to allege facts in support of his claim that these fifteen defendants were personally involved in creating the conditions of his SHU confinement that he seeks to complain of.

As a result, the unlawful confinement claim set forth in the Fifth Cause of Action is dismissed without prejudice for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1).

**F.    Sixth Cause of Action – Due Process**

In the Sixth Cause of Action, plaintiff sets forth claims against defendants North, Hines, Pearson, and Koba which, liberally construed, assert violations of plaintiff's due process rights. *See* Compl. at 22-23.

As against defendant C.O. North, plaintiff alleges that he tampered with hearing tapes that plaintiff requested, and improperly "coached" Scaringi to find plaintiff guilty at a Tier III hearing held in November 2015.  Compl. at 22.

To successfully state a claim under Section 1983 for denial of due process arising out of a disciplinary hearing, a plaintiff must show that he or she both (1) possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient process. *See Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004); *Tellier v. Fields,* 280 F.3d 69, 79-80 (2d Cir. 2000); *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998); *Bedoya v. Coughlin,* 91 F.3d 349, 351-52 (2d Cir. 1996).  "Prison discipline implicates a liberty interest when it 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'"  *Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004) (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).  While not the only factor to be considered, the duration of a disciplinary confinement remains significant under *Sandin*.  *Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000).[17]  Thus, while under certain circumstances confinement of less than 101 days could be shown to meet the atypicality standard under *Sandin* (*see Colon*, 215 F.3d at 232 n.5), the Second Circuit generally takes the position that confinement in a SHU, without unusual conditions, for a period of up to 101 days will generally not constitute an atypical hardship, while confinement for a period of more than 305 days has been held to be atypical even if under "normal conditions."  *Ortiz*, 380 F.3d at 654; *Colon*, 215 F.3d at 231.

Here, insofar as plaintiff alleges that C.O. North engaged in conduct which resulted in

---

[17]  For example, segregation for a period of thirty days was found by the Supreme Court in *Sandin* not to impose a significant hardship on an inmate.  *Sandin*, 515 U.S. at 485-86.  In explaining its reasoning, the Court found that the disciplinary confinement failed to present "a dramatic departure from the basic conditions" of an inmate's normal sentence.  *Id.*

his being denied due process at his disciplinary hearing, this claim does not survive initial review. Even assuming that plaintiff enjoyed a protected liberty interest in the disciplinary hearing conducted by Scaringi (and the Court makes no such finding), there is no basis in the complaint upon which the Court could conclude that C.O. North was personally involved in that wrongdoing for purposes of personal liability under Section 1983.

Plaintiff alleges that defendant Hines improperly denied plaintiff's request for documents under the New York Freedom of Information Law ("FOIL"). Compl. at 23.[18] While the exact contours of plaintiff's claim are far from clear, to the extent that he claims that the denial of his FOIL request violated his constitutional rights, that claim is not cognizable in this Section 1983 action. *See Ladeairous v. Attorney Gen. of N.Y.*, 592 Fed. App'x. 47, 48 (2d Cir.), cert. denied sub nom. *Ladeairous v. Schneiderman*, 136 S. Ct. 220 (2015), reh'g denied, 136 S. Ct. 579 (2015) ("'[n]either the First Amendment nor the Fourteenth Amendment mandates a right of access to government information or sources of information within the government's control.'" (quoting *Houchins v. KQED, Inc.*, 438 U.S. 1, 15 (1978)).

As alleged in the complaint, defendant C.O. Pearson confiscated legal materials and grievance records from plaintiff's cell. Compl. at 23. Following this incident, plaintiff "started to have problems obtaining legal research and materials." *Id.*

The Supreme Court has held that even "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). The Second

---

[18] As alleged, plaintiff's request was denied on the ground that it was not timely. Compl. at 23.

Circuit has recognized that New York provides, "an adequate post deprivation remedy in the form of, inter alia, a Court of Claims action." *Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001) (citing *Love v. Coughlin*, 714 F.2d 207, 208-09 (2d Cir. 1983)).[19] As a result, plaintiff's claims against C.O. Pearson arising from the confiscation of his legal papers are not cognizable in this action.

In his complaint, plaintiff alleges that defendant Koba, identified as the Grievance Supervisor, falsely reported that plaintiff never filed any grievances, and "prevented plaintiff from exhausting his grievances against fellow employees." Compl. at 23. In addition, plaintiff alleges that Koba provided false testimony at plaintiff's disciplinary hearing "to make plaintiff look like a gang member." *Id.*

Upon review, the Court finds that plaintiff's claims against defendant Koba do not survive initial review. As discussed above in Part III(D), an inmate does not enjoy a protected due process interest in accessing the inmate grievance system. As a result, plaintiff's claim that defendant Koba did not properly perform his duties as "Grievance Supervisor" at Shawangunk C.F. is not cognizable in this Section 1983 action. In addition, it is well-settled that "provision of false testimony against an inmate by corrections officers is insufficient on its own to establish a denial of due process." *Mitchell v. Senkowski*, 158 Fed. App'x 346, 349 (2d Cir. 2005) (summary order) (citing *Boddie*, 105 F.3d at 862). Thus, the mere allegation

---

[19] The confiscation of an inmate's legal papers related to a legitimate, non-frivolous legal proceeding can give rise to a claim under the First Amendment for interference with access to the courts, provided that the inmate can establish that he or she has suffered prejudice as a result of the actions of corrections officials in the pursuit of his or her legal claims. *See Pacheco v. Pataki*, No. 9:07-CV-850 (FJS/GHL), 2010 WL 3635673, at *3 (N.D.N.Y. Sept. 9, 2010) ("A prisoner has a constitutional right of access to the courts, which is infringed when prison officials actively interfere with a prisoner's preparation of legal documents . . . . [f]or the claim of denial of access to the courts to be successful, a plaintiff must allege an actual injury."). Here, because plaintiff does not claim and there are no facts alleged in the complaint which even suggest, that the problems he experienced with the law library resulted in "actual injury," the complaint does not state a cognizable access to the courts claim.

that a defendant has given false testimony at a disciplinary hearing fails to support a section 1983 claim for damages against the witness providing such testimony. *Green v. Greene*, No. 9:07–CV–0351 (GTS/DEP), 2009 WL 5874308, at \*23 (N.D.N.Y. Mar. 30, 2009); *see also Cole v. Fischer*, No. 07 Civ. 11096, 2009 WL 130186, at \*3 (S.D.N.Y. Jan. 15, 2009).

Based upon the foregoing, plaintiff's claims against defendants North, Hines, Pearson, and Koba set forth in the Sixth Cause of Action are dismissed without prejudice for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1).

### G. Seventh Cause of Action – Inadequate Medical Care

There are two elements to a claim that officials violated a plaintiff's Eighth Amendment right to receive adequate medical care: "the plaintiff must show that she or he had a serious medical condition and that it was met with deliberate indifference." *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009) (citation and punctuation omitted). "The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind." *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003).[20]

In his complaint, plaintiff claims that Dr. Parks acted with deliberate indifference to plaintiff's "health and safety when he deny plaintiff proper and helpful medications." Compl. at 23. Plaintiff does not set forth any facts regarding the nature and extent of his medical and/or mental conditions, his efforts to obtain evaluation and treatment, or the basis for his

---

[20] "An official acts with the requisite deliberate indifference when that official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1970)).

belief that the treatment provided was not "proper and helpful."

Upon review, the Court concludes that the facts alleged in the complaint do not plausibly suggest that Dr. Parks acted with deliberate indifference, was reckless in his treatment of plaintiff, or provided him with treatment that was "inadequate" in a constitutional sense. It is well-settled that an inmate who disagrees with the physician over the appropriate course of treatment has no claim under Section 1983 if the treatment provided is "adequate." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998). The word "adequate" reflects the reality that "[p]rison officials are not obligated to provide inmates with whatever care the inmates desire. Rather, prison officials fulfill their obligations under the Eighth Amendment when the care provided is 'reasonable.'" *Jones v. Westchester County Dept. of Corrections*, 557 F. Supp. 2d 408, 413 (S.D.N.Y. 2008). "[D]isagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention are not adequate grounds for a section 1983 claim." *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001).

As a result, plaintiff's medical indifference claim set forth in the Seventh Cause of Action does not survive initial review and is dismissed without prejudice for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1).

## V.    CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that upon review of the pleadings filed in *Thomas* I and *Thomas* II, the Court finds that there is considerable duplication and repetition of claims and defendants in these two actions, as to which common questions of law and fact exist; because the pleading

24

in *Thomas* II is more complete and because plaintiff has asserted additional claims and named additional defendants in that action, *Thomas* I is hereby **DISMISSED without prejudice** in favor of *Thomas* II; and it is further

      **ORDERED** that plaintiff's IFP application in *Thomas* I (Dkt. No. 11) is **DENIED as moot**; and it is further

      **ORDERED** that plaintiff's IFP application in *Thomas* II (Dkt. No. 10) is **GRANTED**;[21] and it is further

      **ORDERED** that the Clerk provide the superintendent of the facility, designated by plaintiff as his current location, with a copy of plaintiff's inmate authorization (Dkt. No. 3), and notify the official that this action has been filed and that plaintiff is required to pay to the Northern District of New York the entire statutory filing fee of $350 in installments, over time, pursuant to 28 U.S.C. § 1915; and it is further

      **ORDERED** that the Clerk provide a copy of plaintiff's inmate authorization (Dkt. No. 3) to the Financial Deputy of the Clerk's Office; and it is further

      **ORDERED** that plaintiff's claim that he was denied free exercise of his religion by Acting DSS Bertone set forth in the Third Cause of Action survives initial review and requires a response from this defendant; and it is further

      **ORDERED** that plaintiff's remaining claims are **DISMISSED without prejudice** in accordance with 28 U.S.C. § 1915(e)(2)(ii) and 28 U.S.C. § 1915A(b)(1);[22] and it is further

---

[21] Although his in forma pauperis application has been granted, plaintiff will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

[22] Should plaintiff seek to pursue any of the claims dismissed without prejudice, he must file an amended complaint. Any amended complaint, which shall supersede and replace the original complaint in its entirety, must be a complete pleading and must allege claims of misconduct or wrongdoing against each named defendant which plaintiff has a legal right to pursue, and over which this Court may properly exercise jurisdiction.

**ORDERED** that the Clerk shall terminate Polizzi, Pingotti, Lamanna, Taylor-Stewart, Parks, Piliero-Kinderman, Denniston, Koba, Bode-Cutler, Snyder, Pearson, Gardner, Hines, Cunningham, Clayburn, Scaringi, Cutler, Stefanik, and North as defendants in this action; and it is further

**ORDERED** that upon receipt from plaintiff of the documents required for service of process, the Clerk shall issue a summons and forward it, along with a copy of the complaint, to the United States Marshal for service on defendant Bertone. The Clerk shall forward a copy of the summons and complaint to the Office of the New York State Attorney General, together with a copy of this Decision and Order; and it is further

**ORDERED** that a response to plaintiff's complaint be filed by defendant Bertone or his counsel as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED** that all pleadings, motions and other documents relating to this action must bear the case number (No. 9:17-CV-0377), and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; his failure to do so will result in the dismissal of this action**; and it is further

---

Any amended complaint filed by plaintiff must also comply with the pleading requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure.

**ORDERED** that the Clerk of the Court serve a copy of this Decision and Order on plaintiff.

**IT IS SO ORDERED.**

Dated:      September 6, 2017
               Syracuse, NY

Hon. Glenn T. Suddaby
Chief U.S. District Judge